IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IVES T. ARTIS, | ) |
|     Plaintiff, | ) |
| | ) |
|  vs. | )  Civil Action No. 13-1226 |
| | ) |
| | )  Magistrate Judge Maureen P.Kelly |
| BYUNGHAK JIN, *Medical Director* | ) |
| *(indiviaul Compasity)*; CORIZON | )  ECF Nos. 2, 6 and 7 |
| HEALTH, *Formerly Prison Healthcare* | ) |
| *Services (Official Compasity)*, | ) |
|     Defendants. | ) |

## MEMORANDUM ORDER

**KELLY, Magistrate Judge**

  Plaintiff Ives T. Artis has filed this *pro se* civil rights action seeking compensatory and punitive damages, as well as injunctive relief, arising out of Defendants' treatment of an ankle injury while he has been incarcerated at the Pennsylvania State Corrections Institute at Greene ("SCI – Greene"). Plaintiff has been granted his request to proceed *in forma pauperis* and has filed a series of motions for consideration by the Court prior to the initiation of service of the Complaint. Pending before the Court are Plaintiff's "Motion to Order Prison to Provide Free Copies of Medical Records" [ECF No. 2], "Motion for Injunction" [ECF No. 6], and "Request for Appointment of Counsel" [ECF No. 7]. For the reasons more fully set forth below, each of Plaintiff's motions are denied.

**I. Facts**

  Plaintiff's Complaint [ECF No. 1-1] alleges that Defendants' three year course of medical treatment for an ankle injury constituted cruel and unusual punishment in violation of

1

his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff's medical treatment included physical therapy, a six-month course of Vicodin, allegedly dangerously high dosages of acetaminophen, at least six sets of x-rays leading to an MRI and, eventually, surgery to treat mild swelling, small fracture fragments and apparent ligament tears with resulting mild edema and arthritic changes to Plaintiff's ankle. Plaintiff alleges that Defendant Jin stopped prescribed treatment of ankle braces and pain medication while Plaintiff was placed in the Restricted Housing Unit ("RHU"), leading to difficulty walking and additional injuries in conjunction with the provision of a defective walker.[1] Plaintiff alleges that his prescribed footwear was returned upon his return to general housing, but that the failure to provide the footwear while in the RHU caused injury to his healthy ankle. In addition, Dr. Jin allegedly refused to see Plaintiff for follow-up care and treatment and otherwise allowed him to suffer in pain.

**II. Discussion**

    **1. Motion to Order Free Copies of Medical Records**

Plaintiff's Motion to Order Prison to Provide Free Copies of Medical Records [ECF No. 2] is denied because Plaintiff has failed to establish that he has followed appropriate prison procedures to inspect the requested documents and to copy any documents by paying the appropriate photocopying charge. See Victor v. Varano, No. 11-891, 2012 WL 1514845 (M.D. Pa. May 1, 2012) (finding that requiring an inmate to submit an Inmate Request to Staff to the Superintendent's Assistant "is a fitting and proper procedure for [an inmate] to follow in securing access to these medical records"); Daniels v. Kelchner, No. 05–1601, 2007 WL

---

[1] Plaintiff attaches to his Complaint copies of grievances filed in accordance with the Pennsylvania Department of Corrections' administrative review process [ECF 1-2], which indicate that Plaintiff's medication was "adjusted" after he was caught selling his Vicodin and that his air cushioned shoes and braces were removed while housed in the RHU for security reasons. [ECF No. 1-2, pp. 25, 28].

2068631 (M.D.Pa. July 17, 2007). (Kane, J.) (denying the plaintiff's motion to compel discovery because he had not executed a DC–108 medical release form in accordance with prison policy regarding production of an inmate's medical records).

Plaintiff contends that his indigent status entitles him to free copies of his records; however, the United States Supreme Court has noted that the "expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress." United States v. McCollom, 436 U.S. 317, 321 (1976). The *in forma pauperis* statute, 28 U.S.C. § 1915, provides that a federal court may authorize the commencement and prosecution of a lawsuit "without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). While the statute does not define what constitutes "fees" within the meaning of its provisions, in Tabron v. Grace, 6 F.3d 147 (3d Cir.1993), the United States Court of Appeals for the Third Circuit held that "[t]here is no provision in [28 U.S.C. § 1915] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a suit brought by an indigent litigant." Id. at 159 (emphasis added); citing In re Richard, 914 F.2d 1526, 1527 (6th Cir.1990) (Section 1915 "does not give the litigant a right to have documents copied and returned to him at government expense.").

Here, although Plaintiff has established his entitlement to proceed in forma pauperis, there is no statutory authority permitting the Court to direct that his discovery expenses be paid on his behalf. Payo v. Rustin, No. 08-1147, 2010 WL 1254926 (W.D. Pa. Mar. 25, 2010). Further, the Court finds that even if its equitable powers grant it the ability to grant some form of relief in this case, Plaintiff has not made any showing that he is unable to obtain those copies

beyond his bare assertion that he lacks funds to pay the required fee. Id. Accordingly, Plaintiff's Motion to Order Prison to Provide Free Copies of Medical Records [ECF No. 2] is hereby denied.

**2. Motion for Injunction**.

Plaintiff has also filed an apparent motion for an "Injunction" [ECF No. 6], which seeks a temporary transfer to another facility because Plaintiff is "in danger because the lack of [medical] treatment that is being received." [ECF No. 6, p. 2]. Plaintiff broadly alleges that (1) he is not being provided prescribed medication, sick call visits and follow-up appointments with a specialist; (2) that medical records are being removed and/or falsified; (3) that he is not being permitted copies of his records; and (4) is being charged erroneous fees to his prisoner account.

As most recently examined in Goodwin v. Glunt, No.13-C0148, 2013 WL 5202088 (W.D. Pa. Sept. 16, 2013), inmate pro se pleadings which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained:

> Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

Gerardi v. Pelullo, 16 F.3d 1363 (3d Cir.1994) (quoting SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)).

A preliminary injunction is not granted as a matter of right. Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982). It is an extraordinary remedy. Given the extraordinary nature

of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.'" Emile v. SCI–Pittsburgh, No. 94–974, 2006 WL 2773261 at *6 (W.D. Pa. Sept. 24, 2006) (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992)). Thus, when considering such requests, courts are cautioned that:

> [A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L.Ed.2d 162 (1997) (emphasis deleted). Furthermore, the Court must recognize that 'an [i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.' Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53, 520 F.2d 1220, 1230 (6th Cir. 1975), *cert. denied*, 428 U.S. 909, 96 S. Ct. 3221, 49 L.Ed.2d 1217 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that 'upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir.1937).

Emile, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Federal Rule of Civil Procedure 65, he must demonstrate both a reasonable likelihood of success on the merits and that he will be irreparably harmed if the requested relief is not granted. Abu–Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998). If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989) (emphasis added).

Furthermore, in assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d

at 443. In addition, a request for injunctive relief in the prison context must be viewed with great caution because of the intractable problems of prison administration. Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995). Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir.2001)).

In the past, inmates have frequently sought preliminary injunctive relief compelling prison officials to take certain actions with respect to them during the pendency of a lawsuit. Yet, such requests, while often made, are rarely embraced by the courts. Instead, applying Rule 65's exacting standards courts have frequently held that prisoner-plaintiffs have not shown that they are entitled to use a motion for preliminary injunction as a vehicle to compel prison officials to provide them with some specific relief and services pending completion of their lawsuits. See, e.g., Messner v. Bunner, No. 07–112E, 2009 WL 1406986 (W.D. Pa. May 19, 2009) (denying inmate preliminary injunction); No. 08–128E, 2008 WL 4500482 (W.D. Pa. Oct.7, 2008) (denying inmate preliminary injunction); No. 04–974, 2006 WL 2773261, *6 (W.D .Pa. Sept.24, 2006) (denying inmate preliminary injunction).

In particular, courts have been reluctant to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific medical courses of treatment for inmates. In such instances, courts have typically declined such requests citing the inmate's failure to either demonstrate irreparable harm; Rivera v. Pennsylvania Dep't. Of Corrections, 346 F. App'x 749 (3d Cir. 2009), Rush v. Correctional Medical Services, Inc., 287 F. App'x 142 (3d Cir. 2008), or show a likelihood of success on the merits. Quinn v. Palakovich, 204 F. App'x 116 (3d Cir.2006).

While the Court does not in any way diminish Plaintiff's complaints and concerns, a review of the motion for preliminary injunction leads the Court to conclude that Plaintiff has not made the demanding showing required by Rule 65 for this extraordinary relief. At the outset, the Court finds that Plaintiff has not yet met his threshold obligation of showing reasonable probability of success on the merits. The Court begins by observing that the gravamen of Plaintiff's complaint is that prison medical providers have violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. Plaintiff faces an exacting burden in advancing this Eighth Amendment claim against such personnel in their individual capacities. To sustain such a claim, he must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers–Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir.2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

It is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of

7

prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when, as is the case here, some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa.Oct.13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')." Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa.1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his ... care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.".... [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the

> evidence he presented established that he received timely care.... Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F. App'x. at 197–198. (citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Cause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009); Ascemi v. Diaz, 247 F. App'x 390 (3d Cir. 2007), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.S upp. 833, 836 (E.D. Pa.1997) (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

These guiding principles, which determine the ultimate merits of inmate Eighth Amendment claims, also frequently define the availability of preliminary injunctive relief in such cases. State inmates in Pennsylvania have in the past often invited federal courts to entertain preliminary injunctions directing their jailers to provide them with specially tailored treatment protocols. Yet, these requests, while frequently made, have rarely been embraced by the courts. Rivera v. Pennsylvania Dep't. Of Corrections, 346 F. App'x 749 (3d Cir. 2009); Rush v.

9

Correctional Medical Services, Inc., 287 F. App'x 142 (3d Cir. 2008); Quinn v. Palakovich, 204 F. App'x 116 (3d Cir. 2006).

In this case, much of Plaintiff's argument in his motion for preliminary injunction amounts to little more than a disagreement between an inmate and doctor, which as a matter of law fails as a constitutional claim see, e.g., Cause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009). The gravamen of Plaintiff's motion is devoted to his dispute with the SCI–Greene Medical Department and its decisions regarding treatment of his persistent ankle injury. Plaintiff has not shown a substantial likelihood of success on the merits of his claims warranting a preliminary injunction in this case. In addition, Plaintiff's unsupported allegations regarding record tampering are subject to review at the appropriate stage of the litigation. Given that Plaintiff's Complaint has not yet been served and Defendants have not yet filed their response thereto, Plaintiff's discovery related claims may be addressed after the service of an appropriate request for the production of documents in accordance with the Federal Rules of Civil Procedures. Accordingly, because of Plaintiff's low likelihood of success on the merits of his claims, the remaining factors need not be addressed and Plaintiff's motion for an injunction ordering his temporary transfer to another facility is denied. Goodwin v. Glunt, 2013 WL 5202088 * 4.

### 3. Request for Appointment of Counsel

Plaintiff has also filed a "Request for Appointment of Counsel" which requires the Court to determine whether or not, under the facts and circumstances of this case, the Court should exercise its discretion pursuant to 28 U.S.C. § 1915(e)(1) and request an attorney to represent Plaintiff in the prosecution of this action. In considering a motion for the appointment of counsel, the Court must determine whether or not to request counsel to represent this indigent litigant

10

under the provisions of 28 U.S.C. § 1915(e)(1), fully recognizing that if successful counsel may be entitled to recover fees under the provisions of Section 1988 of Title 42, United States Code. Section 1915(e)(1) gives the Court broad discretion to determine whether appointment of counsel is warranted, and that determination must be made on a case-by-case basis. Tabron v. Grace, 6 F.3d 147, 157-58 (3d Cir. 1993).

As a threshold matter the district court should consider whether the plaintiff's claim has arguable merit in fact or law. Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997). See Tabron v. Grace, 6 F.3d at 155. If the court determines that the claim has some merit, the court should then consider the following factors:

1. the plaintiff's ability to present his or her own case;

2. the complexity of the legal issues;

3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;

4. the amount the case is likely to turn on credibility determinations;

5. whether the case will require the testimony of expert witnesses; and

6. whether the plaintiff can attain and afford counsel on his own behalf.

Parham v. Johnson, 126 F.3d at 457. "The list of factors is not exhaustive, but instead should serve as a guidepost for the district courts. Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." Id. at 458.

After careful consideration of Plaintiff's allegations, it would appear that the appointment of counsel is not warranted and, therefore, the Court will not exercise its discretion.

Initially, as set forth *supra,* it does not appear with any degree of certainty that Plaintiff is setting forth a factual basis which demonstrates that he will ultimately prevail on the merits. Nevertheless, in considering factors one and two – the litigant's ability to present his case and the difficulty of the legal issues involved – it is clear that the issues presented in the complaint are neither difficult nor complex, and nothing in the record indicates that Plaintiff is incapable of presenting his case. In fact, Plaintiff has amply demonstrated his ability to file motions and otherwise communicate with the Court during the course of this litigation. Similarly, the third consideration – the degree to which factual investigation will be necessary and Plaintiff's ability to conduct such investigation – does not weigh in favor of the appointment of counsel it is too early in the litigation to what, if any, factual investigation will be necessary.

Further, while it may be that the credibility of witnesses will be at issue in the case, it does not appear that the case will become a "swearing contest" nor does it appear that proper adjudication will require the testimony of expert witnesses. Indeed, the only factor that seemingly weighs in Plaintiff's favor is the fact that he would be unable to afford to retain counsel on his own behalf as evidenced by his having requested and been granted *in forma pauperis* status. While it may be that this factor weighs in favor of appointing counsel, standing alone, it does not outweigh the other factors discussed. See Torrence v. Saunders, 2012 WL 137744, at *2 (D.N.J. Jan. 18, 2012); Torres v. Yocum, 2011 WL 6100333, at *2 (M.D. Pa. Dec. 07, 2011); Ortiz v. Schmidt, 2011 WL 282745, at *2 (D.N.J. Jan. 24, 2011).

The Court does not intimate that Plaintiff would not benefit from the appointment of counsel, but rather it appears that the appointment of counsel will not materially aid justice to such a degree as to warrant the exercise of our discretion. Thus, until such time as a showing is made that the interests of justice require our exercise of discretion, the Court declines to do so.

See <u>Lassiter v. Dept. Social Services</u>, 452 U.S. 18 (1981).  Accordingly, the following Order is entered:

AND NOW, this 5th day of November, 2013, IT IS HEREBY ORDERED that

(1) Plaintiff's "Motion to Order Prison to Provide Free Copies of Medical Records" [ECF No. 2] is DENIED;

(2) Plaintiff's Motion for Injunction [ECF No. 6] is DENIED; and

(3) Plaintiff's "Request [Motion] for Appointment of Counsel" [ECF No. 7] is DENIED.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of this Order to file an appeal to the District Judge which includes the basis for objection to this Order.  Any appeal is to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.  Failure to file a timely appeal will constitute a waiver of any appellate rights.

BY THE COURT,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


cc: Ives T. Artis
HF-0596
SCI Greene
175 Progress Drive
Waynesburg, PA 15370